UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
ESTHER CONTRERAS,

                    Plaintiff,                  **REPORT AND RECOMMENDATION**
                                            **23 CV 9083 (AMD)(LB)**

     -against-

JUAN CARLOS CASTRO and MATECAÑA
BAKERY INC.,

                    Defendants.
-------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

      Plaintiff Esther Contreras brings this civil action against defendants Juan Carlos Castro

and Matecaña Bakery Inc., alleging defendants violated her rights under the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et. seq.*, the New York Labor Law ("NYLL"), Art. 6

§§ 190-99 and Art. 19 §§ 650-65 *et. seq.*, the New York State Human Rights Law ("NYSHRL"),

N.Y. Exec. Law §§ 296 *et. seq.*, the New York City Human Rights Law ("NYCHRL"), N.Y.C.

Admin. Code §§ 8-107 *et. seq.*, the Trafficking Victims Protection Act ("TVPA"), 22 U.S.C. §§

7101 *et. seq.* and New York Social Services Law ("NYSSL"), N.Y. Soc. Serv. Law § 483-bb(c).

Plaintiff alleges defendants failed to pay her minimum and overtime wages, subjected her to

sexual harassment, made deportation threats that coerced her to continue working, and

discriminated against her based on disability.  Despite proper service of the complaint on

defendants, they have failed to plead or otherwise defend this action.  On March 1, 2024, the

Clerk of Court entered a default against defendants pursuant to Federal Rule of Civil Procedure

55(a).  Plaintiff now moves for a default judgment pursuant to Rule 55(b)(2) of the Federal Rules

of Civil Procedure.

The Honorable Ann M. Donnelly referred plaintiff's motion to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, I respectfully recommend that plaintiff's motion should be granted in part and denied in part as set forth herein.

## BACKGROUND[1]

Matecaña Bakery is a Colombian café and restaurant in Queens, New York that offers dine-in and take-out services. Compl. ¶ 29, 22, ECF No. 1. Individual defendant Juan Carlos Castro owned, controlled, and operated defendant Matecaña Bakery Inc. and regularly hired, disciplined, and fired employees, as well as set wages, schedules, and controlled conditions of employment. Id. ¶¶ 30–32.

### *Wages, Hours, and Tips at the Bakery*

Plaintiff worked as a cashier at the bakery from approximately August 20, 2016 until April 24, 2018, when she was terminated. Id. ¶¶ 22–36, 39. Plaintiff worked six days per week, from 5:30 a.m. to 3:00 p.m. five days a week, and a double shift from 5:30 a.m. to approximately 11:00 p.m. one day per week, totaling 65 hours per week. Id. ¶ 41. Regardless of how many hours she worked, plaintiff was paid a flat wage during her employment. Id. ¶¶ 44, 46. Plaintiff was paid weekly wages of $360.00 for her first year of employment, which amounted to approximately $5.56 per hour. Id. ¶¶ 44–45. From August 20, 2017 through April 24, 2018, plaintiff's weekly wages were $405.00, which amounted to approximately $6.25 per hour. Id. ¶¶ 46–47. Plaintiff was never paid overtime compensation, despite consistently working over 40 hours per week. Id. ¶ 49. Castro paid plaintiff in cash every Monday, and at the time of payment,

---

[1] The facts are drawn from the uncontested allegations contained in plaintiff's complaint and are taken as true for the purposes of deciding this motion. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F. 3d 105, 108 (2d Cir. 1997) (deeming well-pleaded allegations in complaint admitted on motion for a default judgment).

he instructed her to sign a form that falsely stated that she worked 40 hours and was paid $8.00 per hour. Id. ¶ 19.

Plaintiff was the only employee who served customers at the bakery, so she was the only one entitled to tips, which were placed in a tip jar by the cash register or left by customers on the tables. Id. ¶¶ 60–61.  The total amount of tips varied but averaged approximately $70 to $80 per day. Id.  At the end of each day, Castro required plaintiff to count the tips in front of him. Id. ¶ 62.  Castro would then count the money in the register, assert it was short, and take plaintiff's tips to make up for the claimed shortage. Id. ¶ 62.  Each day, Castro took on average $30 to $40 in tips that plaintiff was entitled to. Id. ¶ 65.

Plaintiff did not receive the "Notice and Acknowledgement of Pay Rate and Payday Under Section 195.1 of the New York State Labor Law" during her employment at Matecaña Bakery. Id. ¶¶ 52, 55. As a result, plaintiff did not know that she had a right to a regular pay rate, an overtime rate, a regular payday, and what deductions were taken from her pay. Id. ¶¶ 52, 55.

*Sexual Harassment and Hostile Work Environment*

Plaintiff was sexually harassed by defendant Juan Carlos Castro throughout her employment at the bakery. Id. ¶ 67.  This included Castro watching pornographic videos during work hours when plaintiff was present and asking plaintiff invasive questions about her sex life. Id. ¶ 67–74.

Castro also permitted other employees to sexually harass plaintiff. Id. ¶ 76.  On two stated occasions, in January 2017 and February or March 2017, Roberto, a baker and cook at the bakery, grabbed plaintiff's breasts with his hands, and once put his hands inside her blouse. Id. ¶ 77–79.  Plaintiff reported Roberto's assaults to Castro, but Castro responded: "So what? What do you want me to do? You don't have any [immigration] papers," which plaintiff understood as a

threat that she could be deported if she went to the police to report the assault. Id. ¶ 80.   On

several occasions, Castro rubbed his genitals against plaintiff when he passed her, which made

plaintiff extremely uncomfortable and when she confronted him about it, he denied any

misbehavior and said it was normal. Id. ¶ 75.

*Threats to Call the Immigration Authorities*

Castro threatened to call immigration authorities on plaintiff if she quit working for him

or reported her unpaid wages or sexual harassment to any authorities. Id. ¶ 83.  His threats

included telling "employees that now he knew what to do to report undocumented workers," and

telling plaintiff that a customer worked for immigration authorities and that plaintiff should "start

running to get a head start." Id. ¶ 84–85.

Plaintiff alleges that she felt coerced into working for defendants for very little pay while

suffering ongoing sexual harassment and a hostile work environment, as she needed her job to

survive and she was afraid of deportation. Id. ¶ 87.

*Disability Discrimination and Termination*

Defendant Castro did not allow plaintiff to take medical leave on at least two occasions.

Id. ¶ 88–91.  Around December 2016, plaintiff was forced to work with severe pain, fever, and

congestion due to asthma when Castro refused her request for sick time. Id. ¶ 88.  Further, in

April 2018, plaintiff suffered a personal medical emergency, where she had severe swelling,

pain, and fever due to mastitis. Id. ¶ 89.  She requested time off work because of her illness, and

also asked for time off to treat her asthma. Id. ¶ 90.  Castro refused to approve her request for

time off and became so angry about her requests that he hit the walls,[2] stating that plaintiff "was

---

[2] This was not the first time Castro hit the walls of the bakery in anger.  In or around March 2017, plaintiff arrived to work with a red eye and Castro asked whether her husband had hit her. Compl. ¶ 74, ECF No. 1.  When she told Castro it was from the stress of being overworked by him and that she was going to report him, Castro became angry and punched the wall. Id.

not allowed to do whatever she wanted." Id. ¶ 90–91.  Plaintiff then quickly took her tips from the tip jar and left the bakery as Castro continued to hit the bakery's walls. Id. ¶ 91.  Plaintiff did not immediately return to work, as she was ill and had medical appointments. Id. ¶ 92–94.  A regular customer told plaintiff that someone else had been hired for her position. Id. ¶ 95.  Plaintiff went to the bakery and found someone else at the cash register. Id. ¶ 96.  Castro saw her and told her to "give me my keys and everything else that you have," as she no longer worked there. Id. ¶ 97.

As a result of her employment at the bakery and her firing, plaintiff suffers from depression, anxiety, and panic attacks. Id. ¶ 98.  She receives psychological counseling and is taking medication to treat her depression and anxiety. Id. ¶ 98; Contreras Decl. ¶ 63–64, ECF No. 12-6.

## PROCEDURAL HISTORY

Plaintiff filed a complaint with the New York Department of Labor on May 10, 2018 for failure to pay minimum wages, failure to pay overtime wages, and illegal wage deductions. Id. ¶ 99.  On October 31, 2023, plaintiff informed the agency that she intended to pursue a private action to address her claims, as she had not heard from the agency in years. Id. ¶ 100.

On October 2, 2018, plaintiff filed an administrative charge with the New York City Commission on Human Rights ("NYCCHR"), against the bakery, defendant Castro, and Robert "Doe" for unlawfully discriminating and creating a hostile work environment because of her actual or perceived disability, gender, and alienage, and for retaliating against her for engaging in a protected activity. Id. ¶ 101.  The NYCCHR issued a Notice of Probable Cause Determination and of Intention to Proceed to Public Hearing, dated October 21, 2020, due to "respondents' continued failure to file a verified answer or otherwise participate in this investigation." Id. ¶

102.  To the best of plaintiff's knowledge, the NYCCHR took no further action regarding her administrative charge. Id.

Plaintiff filed her complaint in this Court on December 11, 2023. ECF No. 1.  Defendant Castro was served personally on January 4, 2024, and Matecaña Bakery Inc. was served via the Secretary of State on December 19, 2024. ECF No. 5; ECF No. 12-2; ECF No. 6.  On February 27, 2024, the Court directed plaintiff to take appropriate action as defendants had not responded to the complaint. Order dated February 27, 2024.  The Clerk of Court noted entry of defendants' default on March 1, 2024. ECF No. 7; ECF No. 8.  Plaintiff filed the instant motion for a default judgment on March 29, 2024. ECF No. 10.  The Honorable Ann Donnelly referred the motion to me on April 1, 2024.  Upon review, plaintiff's default judgment motion was deficient in two respects: first, the proof of service on Matecaña Bakery was insufficient, and second, plaintiff had not provided proof of defendant Castro's military status. Order dated June 25, 2024.  Plaintiff supplemented her motion and corrected the deficiencies on July 9, 2024. ECF No. 12.

## DISCUSSION

### I.    Jurisdiction and Statute of Limitations

Plaintiff's complaint alleges this Court has subject matter jurisdiction over this action as it arises under the FLSA and TVPA, both of which are federal statutes. 28 U.S.C. § 1331.  Plaintiff's complaint alleges this court has supplemental jurisdiction over the related NYLL, NYSHRL, NYCHRL and NYSSL claims as they arise out of a common set of facts. 28 U.S.C. § 1367.  Although this is a default judgment, the Court cannot turn a blind eye to the fact that plaintiff was terminated in 2018 and the instant complaint was not filed until December 2023.  The statute of limitations for a FLSA action is two years, or three years for willful conduct. 29 U.S.C. § 255(a).  This perhaps explains the somewhat unusual pleadings in this case.  Had

defendants appeared, they could have raised the statute of limitations as an affirmative defense.[3] Since they did not appear, plaintiff pursues her claims under both the FLSA and NYLL. However, the Court should not rely on plaintiff's FLSA claims as the basis for federal question jurisdiction. See Rana v. Islam, 887 F.3d 118, 123, n.3 (2d Cir. 2018) (when a plaintiff brings a claim under both FLSA and NYLL, "she should always receive the larger of the damages," which are greater under the NYLL).  As discussed infra, the complaint alleges a plausible claim under the TVPA.  With the TVPA as the federal hook for plaintiff's claims, the Court can consider plaintiff's state and city law claims. 28 U.S.C. § 1367.

## II.    Standard for Default Judgment

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment.  First, "[w]hen a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).  Second, after a default has been entered against a defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on a plaintiff's motion, enter a default judgment. Id. 55(b)(2).

In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993).  On a motion for default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997).  In determining whether to issue a default

---

[3] The statute of limitations is not jurisdictional, but could be raised on a motion to dismiss for failure to state a claim upon which relief could be granted. Kai Yan Lai v. Wai Mon Leung, No. CV 11-3561 (SJ) (MDG), 2012 WL 4472155, at *2 (E.D.N.Y. Aug. 31, 2012), report and recommendation adopted, No. 11-CV-3561 (SJ) (MDG), 2012 WL 4472143 (E.D.N.Y. Sept. 26, 2012).

judgment, the Court has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). In making this determination, "the court is limited to the non-conclusory, factual allegations in the complaint." Antoine v. Brooklyn Maids 26, Inc., 489 F. Supp. 3d 68, 78 (E.D.N.Y. 2020). The Court is not so restricted in determining damages, which may be calculated based on documentary evidence, affidavits, or evidence gleaned from a hearing on damages. Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111.

Here, plaintiff has satisfied the two-step process to obtain a default judgment. Defendant Castro was served with process on January 4, 2024 and has failed to respond to plaintiff's complaint. ECF No. 6. Likewise, defendant Matecaña Bakery was served with process on December 19, 2023 by way of New York Secretary of State. ECF No. 12-2. Further, plaintiff demonstrates that she has taken the required steps under the Local Rules by requesting and obtaining a Certificate of Default, making an application to the Court for a default judgment, and filing proof that the motion has been sent to defendants. ECF Nos. 8, 10, 10-4; see Local Civ. R. 55.2.

## III.    Liability

### A.  Trafficking Victims Protection Act

Plaintiff's complaint alleges defendants violated her rights under the TVPA for forced labor. Compl. ¶ 209, ECF No. 1. The TVPA provides a private right of action to victims of forced labor. Adia v. Grandeur Mgmt., Inc., 933 F.3d 89, 92–93 (2d Cir. 2019); 18 U.S.C. §§ 1589(a), 1590(a), 1595(a). "As its plain terms indicate, one objective of the TVPA is to ensure that workers will not be coerced into remaining in their jobs because they reasonably fear a threat

of serious harm." <u>Vidal v. Advanced Care Staffing, LLC</u>, No. 22-CV-05535 (NRM) (MMH), 2023 WL 2783251, at *13 (E.D.N.Y. Apr. 4, 2023).  A person violates the TVPA if they ". . . obtain the labor or services of any one . . . (3) by means of the abuse or threatened abuse of law or legal process . . . "  18 U.S.C. § 1589(a).  "Abuse or threatened abuse of law or legal process" is defined as

> "the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action."

18 U.S.C. § 1589(c)(1).  Courts have found threats regarding deportation sufficient to support forced labor claims under the TVPA. <u>Aguirre v. Best Care Agency, Inc.</u>, 961 F. Supp. 2d 427, 444 (E.D.N.Y. 2013) (collecting cases); <u>see also</u> <u>United States v. Garcia</u>, No. 02-CR-110S-01, 2003 WL 22956917, at *4 (W.D.N.Y. Dec. 2, 2003) (threatening deportation constitutes "abuse of legal process" as the objective is to intimidate and coerce plaintiffs into forced labor). Further, plaintiff also alleges liability under state law for Castro's threats of deportation. <u>Compare</u> N.Y. Penal Law § 135.35 <u>and</u> N.Y. Soc. Servs. Law § 483-bb(c) (where victims can pursue a state remedy against their perpetrator for threatening deportation proceedings when the perpetrator compels a person to engage in labor).

Plaintiff alleges that defendants violated the TVPA and N.Y. Penal Law § 135.35 when Castro threatened to report plaintiff to the immigration authorities to keep her working at the bakery for unlawful wages and from complaining about defendants' discriminatory conduct. Compl. ¶ 209–13, ECF No. 1.  In November 2017, defendant Castro told employees that he "knew what to do to report undocumented workers" when employees were watching a news program on Univision about immigrant deportations and immigration policies. Compl. ¶ 84, ECF

No. 1.  In February 2018, defendant Castro told plaintiff that a bakery customer, who was wearing a green official uniform "worked for immigration authorities" and that plaintiff "should start running to get a head start," which plaintiff understood to mean that "she should run away so that the official would not arrest and deport her." Id. ¶ 85.  Further, when plaintiff's co-worker sexually assaulted her, defendant Castro stated, "So what? What do you want me to do? You don't have any [immigration] papers," which plaintiff understood to mean that she could be deported if she went to the police to report unlawful behavior. Id. ¶ 80.

Here, plaintiff's complaint plausibly establishes defendants' liability under the TVPA and NYSSL, as plaintiff alleges defendants threatened her with deportation in an effort to exert pressure on her to keep her working at the bakery. Compl. ¶ 80, 84–85, ECF No. 1; Belvis v. Colamussi, No. CV 16-544 (JFB) (ARL), 2018 WL 3151698, at *6 (E.D.N.Y. Feb. 20, 2018).

## B.  Liability for Unpaid Wages

### 1.  Defendants were Plaintiff's Employers

Plaintiff must demonstrate that defendants were her employers to recover under either the FLSA or the NYLL.[4]  Plaintiff states that defendant "Castro controlled and managed all aspects of the bakery's operations and business and employment practices and established and exercised authority over the terms and conditions of plaintiff's employment with the bakery," including

---

[4] Courts in this Circuit assign a "coextensive" definition to the term "employer" under both the FLSA and the NYLL. See Li v. Leung, No. 15-CV-5262 (CMA) (VMS), 2016 WL 5369489, at *10 (E.D.N.Y. June 10, 2016)) (quoting Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 308 n.21 (S.D.N.Y 2011) Report and Recommendation adopted by 2016 WL 5349770 (E.D.N.Y. Sept. 23, 2016). "[T]he determination of whether an employer-employee relationship exists for the purposes of FLSA should be grounded in 'economic reality rather than technical concepts.'" Irizarry v. Catsimatidis, 722 F.3d 99, 104 (2d Cir. 2013) (internal quotation marks omitted) (quoting Barfield v. N.Y.C. Health and Hosps. Corp., 537 F.3d 132, 141 (2d Cir. 2008)).  The Second Circuit instructs that in examining "the 'economic reality' of an employment relationship," Courts should look to "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (3) maintained employment records." Id. (internal quotation marks omitted).  Further, a plaintiff must allege that a defendant engaged in interstate commerce with gross sales over $500,000. Zhen Ming Chen v. Y Café Ave. B Inc., No. 18-CV-4193 (JPO), 2019 WL 2324567, at *2 (S.D.N.Y. May 30, 2019).  However, "unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law." Garcia v. Badyna, No. 13-CV-4021 (RRM) (CLP), 2014 WL 4728287, at *6 (E.D.N.Y. Sept. 23, 2014).

"the Bakery's employment, personnel, and pay practices." Compl. ¶¶ 20, 31, ECF No. 1.  Castro "had the power to hire, discipline, and fire employees of the Bakery, set their wages [and] schedules, and otherwise control the terms and conditions of their employment." Id. ¶ 32.  These facts, coupled with his position as an owner, officer and/or agent of the bakery who has operational control over Matecaña Bakery Inc., permit the Court to conclude that defendants were plaintiff's employer under the NYLL. See Bynog v. Cipriani Grp., Inc., 1 N.Y.3d 193, 198, 802 N.E.2d 1090, 1093 (2003) (identifying five factors relevant in assessing whether an employer had sufficient control over a worker, thus creating an employer-employee relationship).  Consequently, each defendant is jointly and severally liable for any amount awarded by the Court under the NYLL.  Li v. Leung, No. 15-CV-5262 (CBA) (VMS), 2016 WL 5369489, at *11 (E.D.N.Y. June 10, 2016), report and recommendation adopted as modified, No. 15-CV-5262 (CBA), 2016 WL 5349770 (E.D.N.Y. Sept. 23, 2016).

## 2.  Unpaid Minimum Wages

The minimum wage in New York and New York City changed multiple times during the relevant time period as follows: $9.00 per hour on and after December 31, 2015; $10.50 per hour on and after December 31, 2016; $12.00 per hour on and after December 31, 2017.[5] N.Y. Lab. Law § 652(1); 12 N.Y. Admin. L. Code § 142-2.1(a)(1)(ii).  Plaintiff states that defendants never paid her minimum wage as required by New York State or City law. Compl. ¶ 48, 44, 46, ECF No. 1.  Plaintiff's complaint states a plausible claim against defendants for failure to pay her the minimum wage under NYLL and establishes defendants' liability. Martinez v. Alimentos Saludables Corp., No. 16-CV-1997 (DLI) (CLP), 2017 WL 5033650, at * 10 (E.D.N.Y. Sept. 22, 2017).

---

[5] The record establishes that defendants employed ten or fewer employees. Contreras Decl. ¶ 3, ECF No. 12-6. Therefore, N.Y. Lab. Law § 652(1)(a)(ii) and 12 N.Y. Admin. L. Code § 142-2.1(a)(1)(ii), which governs small employers, establishes the minimum wage due to plaintiff.

### 3.  Overtime Pay

In New York, an employer must pay employees time-and-a-half for working more than forty hours per week. 12 N.Y. Comp. Codes R. & Regs. § 142-2.2 ("An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate . . ."). Plaintiff states that she worked approximately 65 hours per week throughout her employment at the bakery, working nine hours and thirty minutes per day five days a week, and seventeen hours and thirty minutes one day a week. Compl. ¶ 41, ECF No. 1.[6]  Despite the number of hours plaintiff worked, plaintiff was only paid a weekly wage of $360.00 for her first year of employment and $405.00 per week for her second year until she was terminated. Id. ¶¶ 44–47. These allegations, accepted as true, are sufficient to establish defendants' liability for unpaid overtime. See Nam v. Ichiba Inc., No. 19-CV-1222 (KAM), 2021 WL 878743, at *7 (E.D.N.Y. Mar. 9, 2021) (finding detailed allegations that plaintiffs worked over forty hours a week sufficient to support defendants' liability on a motion for a default judgment); see also Juan v. Son of Polisi, Inc., No. 19-CV-04662 (LDH) (PK), 2021 WL 2179344, at *9 (E.D.N.Y. Jan. 24, 2021) (plaintiff's allegations of working fifty-three hours per week and never receiving overtime compensation was sufficient to establish overtime liability).

### 4.  Spread of Hours Pay

New York law requires an employer to provide spread of hours pay of "one additional hour of pay at the basic minimum hourly wage rate" on any day in which the employee worked more than 10 hours. 12 N.Y.C.R.R. § 142-2.4(a). A plaintiff sufficiently establishes an

---

[6] In plaintiff's declaration, she states the same schedule of days and times worked but calculates her weekly hours as 55.25 hours, not 65 hours. Contreras Decl. ¶ 8, ECF No. 12-6. Plaintiff's counsel calculated her wages at 55.25 hours worked per week in the damages spreadsheet provided to the Court. ECF No. 12-7. However, counsel did not include "Monday" in "Plaintiff's Average Work Schedule at the Bakery." ECF No. 12-7 at 6. Counsel further notes plaintiff's double shift was worked on Thursdays instead of Tuesdays. ECF No. 12-7; contra Compl. ¶ 41, ECF No. 1; see also Contreras Decl. ¶ 8, ECF No. 12-6. Regardless of whether plaintiff's weekly hours were 55.25 or 65, plaintiff has established defendants' liability for overtime wages. Plaintiff may prove her damages at an inquest.

employer's liability for failure to provide spread of hours pay when she alleges that she worked in "excess of ten hours on a given day" but did not receive spread of hours pay. See Martinez v. Alimentos Saludables Corp., No. 16-CV-1997 (DLI) (CLP), 2017 WL 5033650, at *17–18 (E.D.N.Y. September 22, 2017) (recommending an award of spread of hours pay when plaintiffs alleged they worked over ten hours a day but never received an additional hour of pay); Arellano v. Green Apple 37 Inc., No. 20-CV-5293 (LJL), 2021 WL 4319568, at *2 (S.D.N.Y. Sept. 23, 2021) (citing Ventura v. Herreros, No. 18-CV-6478 (BMC), 2019 WL 343244, at *1 (E.D.N.Y. Jan. 28, 2019) (an employee must work over ten hours a day to receive spread of hours pay).

Here, plaintiff's complaint alleges that defendants did not provide plaintiff spread of hours pay and she routinely worked more than ten hours per day. Compl. ¶ 41, 57, ECF No. 1. This allegation is sufficient to establish defendants' liability for failure to provide "spread of hours" pay. See Rahman v. Red Chili Indian Café, Inc., No. 17-CV-5156 (RA), 2021 WL 2003111, at *3 (S.D.N.Y May 19, 2021) (finding plaintiff's allegation that he regularly worked over ten hours a day but did not receive spread of hours pay sufficient to establish liability).

### 5. Garnished Tips

Plaintiff's complaint also alleges that defendants violated her rights under § 196-d of the NYLL by unlawfully taking her gratuities. Compl. ¶ 59, ECF No. 1. Section 196-d of New York Labor Law provides,

> No employer or his agent or an officer or agent of any corporation . . . shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee.

N.Y. Lab. Law § 196-d. Plaintiff's complaint alleges that she was the only employee that served customers at the bakery. Compl. ¶ 61, ECF No. 1. Plaintiff further alleges that defendants violated the tip credit provision of the NYLL when Castro regularly claimed a portion of the tips

to make up for a purported cash register shortage or as funds needed for bakery supplies.  Id. ¶¶ 62–66; see Zabrodin v. Silk 222, Inc., 702 F. Supp. 3d 102, 120 (E.D.N.Y. 2023) (plaintiff's employer who was the owner of the business was not entitled to any portion of plaintiff's tips).

### 6.   Wage Notice and Statement Requirements

Plaintiff also alleges that defendants failed to provide her with certain notices as required by New York law. Compl. ¶¶ 52–55, ECF No. 1.   NYLL § 195(1)(a) requires every employer, at the time of hire, provide employees with a written notice which contains specified information. This information includes the employee's rate of pay, any claimed allowances, the employee's pay day, and other information about the employer's business. NYLL § 195(1)(a).  Plaintiff alleges that she was never provided with the written notice required by NYLL § 195(1), and that:

> "If I had received the notice, I would have known that I had a right to a regular pay rate and an overtime pay rate; I would have known what those rates were; I would have known when my regular payday was supposed to be; and I would have known whether any deductions were going to be taken from my pay. If I had known these things, I could have advocated for my rights earlier and could have avoided the underpayment of my wages."

Contreras Decl. ¶ 18, ECF No. 12-6; Compl. ¶ 52–55, ECF No. 1. This allegation is sufficient to establish defendant's liability for failure to provide the required notice, as plaintiff has alleged an injury that is traceable to defendants' challenged conduct that is likely to be redressable by a favorable judicial decision. See Guthrie v. Rainbow Fencing Inc., No. 23-350, 2024 WL 3997427, at *6 (2d Cir. Aug. 30, 2024) ("a plaintiff-employee who has plausibly shown that defective notices led him or her to lose wages has such a concrete interest and is not simply policing legal infractions in the abstract"); see also Lacewell v. Off. of Comptroller of Currency, 999 F.3d 130, 141 (2d Cir. 2021) (stating requirements of Article III standing to establish injury for the purpose of wage notice provisions); Bustillo v. K&J Constr. Consultant Serv., Inc., No.

20-CV-478 (RPK) (CLP), 2022 WL 2467204, at *5 (E.D.N.Y. Feb. 25, 2022) (plaintiff established defendant's liability for failure to provide wage notices in default action).

New York law also requires employers to "furnish each employee with a statement with every payment of wages" which contains the dates covered by the payment, the employee's name, the employer's name, the employer's contact information, the employee's rate of pay and other specified information. NYLL § 195(3).  Plaintiff's allegation that defendants never provided this statement and that she suffered harm as a result is likewise sufficient to establish defendants' liability. Contreras Decl. ¶ 20, ECF No. 12-6; Compl. ¶ 52–55, ECF No. 1; see also Martinez v. Alimentos Saludables Corp., No. 16-CV-1997 (DLI) (CLP), 2017 WL 5033650, at * 21 (E.D.N.Y. Sept. 22, 2017) (finding a defendant liable for a violation of NYLL § 195(3) and recommending damages).

### C.  Discrimination

Plaintiff alleges defendants discriminated against her based on her disability and sex, and that defendants unlawfully terminated her in retaliation for her complaints of discrimination. Compl. ¶ 168, 175, 182, 189, 195–96, ECF No. 1.

#### 1.  Hostile Work Environment

The NYSHRL and NYCHRL prohibit employers from discriminating based on sex. See N.Y. Exec. Law. § 296(1)(a); N.Y.C. Admin. Code § 8-107.  To make a claim of hostile work environment under the NYSHRL,[7] a plaintiff must show that the "harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Antoine v. Brooklyn Maids 26, Inc., 489 F. Supp. 3d 68, 83 (E.D.N.Y. 2020).  To determine whether conduct is sufficiently severe or pervasive, courts consider "(1) the

---

[7] Claims for a hostile work environment and for retaliation "under the NYSHRL are generally governed by the same standards as federal claims under Title VII." See Schiano v. Quality Payroll Sys. Inc., 445 F.3d 597, 609 (2d Cir. 2006).

frequency of the discriminatory conduct; (2) it's severity; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted." Aulicino v. N.Y.C. Dep't of Homeless Servs., 580 F.3d 73, 82 (2d Cir. 2009) (citing Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993)).  The harassment "must be sufficiently continuous and concerted in order to be deemed pervasive." Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997) (citing Harris, 510 U.S. at 21).

Plaintiff alleges that Castro subjected her to ongoing sexual harassment, including frequent verbal harassment as well as physical touching. Compl. ¶ 67, ECF No. 1.  Defendant Castro repeatedly made comments to plaintiff about her appearance, including that she is "'chubby,' had a 'double chin' and 'big belly,' that her 'pants made her butt look big,' [that] she 'used the same perfume that cheap hookers used' . . . [and Castro would] call her an 'ugly dark brown person.'" Id. ¶ 68.  On at least two occasions, defendant Castro and another employee watched pornographic videos during work hours when plaintiff was present, discussed their own sex lives, and asked plaintiff inappropriate questions about her sex life. Id. ¶ 69.  Separately, in or around March 2018, defendant Castro openly talked about sex positions in front of plaintiff and asked plaintiff "how many times she had sex and what sexual acts she enjoyed." Id. ¶ 70. Defendant Castro then pulled out his phone and insisted that plaintiff watch pornographic videos, but plaintiff refused, and Castro ridiculed her for refusing, saying "don't be stupid" and "don't pretend to be innocent." Id. ¶ 71.  Despite expressing that she was uncomfortable with the videos and the questions about her sex life, defendant Castro continued the behavior. Id. ¶ 73.  Soon after the March incident, Castro watched pornographic videos at a high volume when plaintiff came downstairs to work in the kitchen. Id. ¶ 73.  Further, on several occasions, defendant Castro

rubbed his genitals against her, and when she confronted him, he would deny any misbehavior and say it was normal. Id. ¶ 75.

Plaintiff also alleges Castro permitted her coworker to sexually harass her. Id. ¶ 75.  On two occasions, Roberto, who worked as a baker and a cook, grabbed plaintiff's breasts with his hands, and once put his hands inside her blouse. Id. ¶ 78–79.  Plaintiff reported Roberto's assaults to defendant Castro, but Castro did not remedy the situation, and instead said, "So what? What do you want me to do? You don't have any [immigration] papers." Id. ¶ 80.  Plaintiff alleges she continues to suffer as a result of Castro's behavior: she suffered a panic attack and was hospitalized overnight after hearing her new employer yell in the kitchen, as it reminded her of defendant Castro and the abuse she suffered. Contreras Decl. ¶ 64, ECF No. 12-6.

Plaintiff's complaint sufficiently alleges that Castro's behavior was such that a reasonable person would have found the harassment so severe or pervasive as to alter the conditions of plaintiff's employment and it created an abusive working environment. See Redd v. New York Div. of Parole, 678 F.3d 166, 179 (2d Cir. 2012) ("Direct contact with an intimate body part constitutes one of the most severe forms of sexual harassment."); see also Quintero v. Angels of the World, Inc., No. 19-CV-6126 (DG), 2021 WL 4464123, at *9 (E.D.N.Y. Sept. 10, 2021), report and recommendation adopted sub nom. Quintero v. Stoupas, No. 19-CV-06126 (DG) (RLM), 2021 WL 4463488 (E.D.N.Y. Sept. 29, 2021) (plaintiff sufficiently pled a claim of sex-based hostile work environment where plaintiff was harassed through offensive and demeaning gender-based language and suffered unwanted sexual touching); Antoine v. Brooklyn Maids 26, Inc., 489 F. Supp. 3d 68, 83 (E.D.N.Y. 2020) (plaintiff's sexual assault constituted a hostile and abusive environment).  Plaintiff therefore establishes defendants' liability for sex discrimination and a hostile work environment under the NYSHRL.

The NYCHRL is even more protective of plaintiffs than the NYSHRL.  A "plaintiff need only show differential treatment — that she is treated 'less well' — because of a discriminatory intent." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 110 (2d Cir. 2013). As plaintiff has established defendants' liability under the NYSHRL, she also establishes defendants' liability under the less onerous standard of the NYCHRL. Winston v. Verizon Servs. Corp., 633 F.Supp. 2d, 48 (S.D.N.Y. 2009); see also Gangadharan v. GNS Goods & Servs., No. 18-CV-7342 (KAM) (MMH), 2022 WL 824135, at *8 (E.D.N.Y. Mar. 18, 2022) (plaintiff sufficiently pled a hostile work environment claim under NYCHRL by satisfying the heightened standard of NYSHRL).

## 2.  Disability Discrimination

Under the NYSHRL, it is unlawful for an employer to discriminate against an individual because of a disability. N.Y. Exec. Law § 296(1)(a).  A disability is defined as a "physical, mental, or medical impairment resulting from . . . physiological . . . conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques or (b) a record of such an impairment or (c) a condition regarded by others as having such an impairment . . ." N.Y. Exec. Law § 292(21).  Again, compared to the NYSHRL, "the NYCHRL is broader still." Rodriguez v. Verizon Telecom, No. 13-CV-6969, 2014 WL 6807834 at *7 (S.D.N.Y. Dec. 3, 2014). The NYCHRL defines a disability as "any physical, medical, mental or psychological impairment, or a history or record of such impairment." N.Y.C. Admin. Code § 8-102(16).

To establish a *prima facie* case of disability discrimination, a plaintiff must show: (1) the employer is subject to the applicable law; (2) the plaintiff was a person with a disability as defined under state and local law; (3) the plaintiff was otherwise qualified to perform the

19

essential functions of the job, with or without reasonable accommodation; and (4) due to the disability, the employee suffered an adverse employment action. Hughes v. City of New York, No. 20-CV-3341 (AMD) (RLM), 2021 WL 7542440 (E.D.N.Y. August 25, 2021) ("New York state disability discrimination claims are governed by the same standards as federal ADA claims."); Miller v. E. Midwood Hebrew Day Sch., No. 19-CV-5580 (AMD) (LB), 2021 WL 966166, at *3 (E.D.N.Y. Feb. 15, 2021), report and recommendation adopted, No. 19-CV-5580 (AMD) (LB), 2021 WL 965072 (E.D.N.Y. Mar. 15, 2021) ("In the Second Circuit, claims of disability discrimination under the ADA, NYSHRL, and NYCHRL require the same elements to establish a *prima facie* case.").

Plaintiff satisfies the first prong, as defendants are both employers subject to the NYSHRL and NYCHRL.  The NYSHRL applies to "all employers within the state." N.Y. Exec. Law §§ 292(5), 296(1)(a); see also Compl. ¶ 20, 23, ECF No. 1 ("[a]t all relevant times herein, the bakery was Ms. Contreras's 'employer'").[8]

Plaintiff also satisfies the second prong, as plaintiff suffers from asthma which is a medical impairment within the meaning of the NYSHRL and NYCHRL.  Plaintiff was also qualified to perform the essential functions of her job if she had been provided a reasonable accommodation. Fernandez v. Windmill Distrib. Co., 159 F. Supp. 3d 351, 366 (S.D.N.Y. 2016). An employer's failure to engage in an interactive process to accommodate an employee's disability is itself a violation under the NYSHRL and NYCHRL. See Vangas v. Montefiore Med. Ctr., 6 F. Supp. 3d 400, 420 (S.D.N.Y. 2014) ("the first step in providing a reasonable

---

[8] Under the NYCHRL the term employer does not include "any employer that has fewer than four persons in the employ of such employer at all times during the period beginning twelve months before the start of] an unlawful discriminatory practice and continuing through the end of such unlawful discriminatory practice[.]" N.Y.C. Admin. Code. §§ 8-102, 8-107(1)(a).  Plaintiff's complaint alleges that "[a]t all relevant times herein, the Bakery was Ms. Contreras's "employer" within the meaning of the FLSA, the NYSHRL, the NYCHRL, and the NYCRR," and that defendants employed ten or fewer employees. Compl. ¶ 23, ECF No. 1; Contreras Decl. ¶ 3, ECF No. 12-6.

accommodation is to engage in a good faith interactive process that assesses the needs of the disabled individual and the reasonableness of the accommodation requested" and the "failure to consider the accommodation . . . is a violation of [the NYSHRL]" and the NYCHRL).  Here, plaintiff alleges that Castro refused her requests for time off to treat her asthma, and she was terminated immediately after making those requests. Compl. ¶¶ 88–97, ECF No. 1; Contreras Decl. ¶¶ 52–60, ECF No. 12-6.

Plaintiff suffered an adverse employment action when defendants terminated her employment. Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 85 (2d Cir. 2015) (quoting Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003)) (termination is a materially adverse change of the conditions of employment); Davis v. New York City Dep't of Educ., No. 10-CV-3812, 2012 WL 139255, at *5 (E.D.N.Y. Jan. 18, 2012) (termination is an adverse action).  Under the NYSHRL, a plaintiff must also allege that his employer took an adverse action against him because of his disability. Lyman v. N.Y. & Presbyterian Hosp., No. 11-CV-3889 (KPF), 2014 WL 3417394, at *9-10 (S.D.N.Y. July 14, 2014).  "[A]t the pleadings stage, . . . a plaintiff must allege that the employer took adverse action against [him] at least in part for a discriminatory reason." Vega, 801 F.3d at 87; see Lyman, 2014 WL 3417394, at *10 ("[plaintiff] can satisfy her burden of showing that, on her version of the facts, her disability motivated her discharge.").  Under the NYCHRL, "the plaintiff need only show that [his] employer treated [him] less well, at least in part for a discriminatory reason." Mihalik v. Credit Agricole Cheuvreux N. Am., 715 F.3d 102, 109 (2d Cir. 2013).

Here, the close temporal proximity plaintiff alleges between her medical emergency in April 2018, her request for time off to attend to her medical appointments to treat her asthma, and her termination raise an inference of discrimination sufficient to sustain her disability

discrimination claim. See Vale v. Great Neck Water Pollution Control Dist., 80 F. Supp. 3d 426, 437 (E.D.N.Y. 2015) (quoting Shlafer v. Wackenhut Corp., 837 F. Supp. 2d 20, 27 (D. Conn. 2011)) ("Plaintiff has alleged sufficient facts [ . . . ] [to infer] defendant terminated her employment on the basis of her 'disability' [ . . .  since] 'temporal proximity is sufficient to raise an inference of discrimination to plausibly state a claim of employment discrimination.'"); see also Warmin v. New York City Dep't of Educ., No. 16-CV-8044 (KPF), 2019 WL 3409900 at *19 (S.D.N.Y. July 29, 2019) (the close temporal proximity between plaintiff's accommodation request and the termination creates a plausible connection).

As plaintiff presents a plausible *prima facie* case of disability discrimination, plaintiff's motion for a default judgment should be granted on plaintiff's disability discrimination claims under the NYSHRL and NYCHRL.

### 3. Retaliation

To establish a *prima facie* case of retaliation under the NYSHRL and NYCHRL, plaintiff must show that (1) she participated in a protected activity known to the defendant; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. N.Y. Exec. Law § 296(7); N.Y.C. Admin. Code § 8-107(7); Richardson v. Comm'n on Human Rights & Opportunities, 532 F.3d 114, 123 (2d Cir. 2008); Kessler v. Westchester Cnty. Dep't Social Servs., 461 F.3d 199, 205–06 (2d Cir. 2006).

Plaintiff's complaint plausibly establishes that defendants retaliated against her for her complaint of discrimination.  An informal complaint to an employer is sufficient to constitute protected activity. Santana v. Latino Express Restaurants, Inc., 198 F. Supp. 3d 285, 296 (S.D.N.Y. 2016).  Plaintiff objected to or complained to defendant Castro about discrimination and harassment on several occasions.  Plaintiff refused to participate when defendant Castro

watched pornographic videos at work and she complained to Castro when her coworker physically assaulted her. Compl. ¶ 69–72; 80, ECF No. 1.  When plaintiff's domestic partner called Castro after Castro denied plaintiff's requests for medical leave and stated, "you are engaging in labor abuse," Castro replied, "mind your own business" and hung up the phone. Compl. ¶ 88, 90–91, 93–95, ECF No. 1.  Two days later, defendant Castro asked plaintiff for her keys to the bakery, making it clear that she was no longer employed. Compl. ¶ 94–96, ECF No. 1; Contreras Decl. ¶¶ 55–58, ECF No. 12-6.  Plaintiff's complaints of discrimination were protected activity and her termination two days after she requested leave to seek medical attention for her disability raises an inference of discrimination sufficient to establish defendants' liability for retaliation under the NYSHRL and the NYCHRL. Santana, 198 F. Supp. 3d at 297 (plaintiff successfully establishes a retaliation claim under NYSHRL and NYCHRL on a motion for a default judgment action against employer); Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005) ("[A] retaliation claim follows the familiar burden-shifting framework developed to evaluate allegations of disparate treatment.").  Plaintiff has established defendants' liability for retaliation under the NYSHRL and the NYCHRL.

## CONCLUSION

Accordingly, it is respectfully recommended that plaintiff's motion for a default judgment should be granted on plaintiff's TVPA, NYLL, NYSHRL, NYCHRL and NYSSL claims.[9]  As there are inconsistencies in plaintiff's pleading and the instant motion,[10] if this Report and Recommendation is adopted, the Court should conduct an inquest to determine plaintiff's

---

[9] Plaintiff's motion for a default judgment on her claims under FSLA should be denied.

[10] In plaintiff's complaint, she alleges she worked over sixty hours per week, from 5:30 a.m. to 3:00 p.m. five days a week, and one double shift per week on Tuesdays from 5:30 a.m. to approximately 11:00 p.m. Compl. ¶ 41, ECF No. 1.  She reiterates those same hours in her sworn declaration, but states that those hours amount to "approximately 55.25 hours per week." Contreras Decl. ¶ 8, ECF No. 12-6.  Further, plaintiff's "Damages Spreadsheet," is based on 55.25 hours per week, but failed to include "Monday" in "Plaintiff's Average Work Schedule at the Bakery." See ECF No. 12-7 at 6.

damages.  Plaintiff shall serve a copy of this Report and Recommendation on defendants at their last known addresses and file proof of service on the docket forthwith.

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of the Court.  Any request for an extension of time to file objections must be made within the fourteen-day period.  Failure to file a timely objection to this Report generally waives any further judicial review.  Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42, 46 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

                                   /S/
                              LOIS BLOOM
                              United States Magistrate Judge

Dated:  September 10, 2024
        Brooklyn, New York

24