UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
ESTHER CONTRERAS,

                     Plaintiff,                        **REPORT AND RECOMMENDATION**
                                                  **23 CV 9083 (AMD)(LB)**

       -against-

JUAN CARLOS CASTRO and MATECAÑA
BAKERY INC.,

                     Defendants.
-------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

On October 10, 2024, the Court granted plaintiff Esther Contreras' motion for a default judgment with respect to her claims under the Trafficking Victims Protection Act ("TVPA"), 22 U.S.C. §§ 7101 *et. seq.,* New York Labor Law ("NYLL"), Art. 6 §§ 190-99 and Art. 19 §§ 650-65 *et. seq.*, New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 296 *et. seq.*, New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-107 *et. seq.*, and New York Social Services Law claims ("NYSSL"), N.Y. Soc. Serv. Law § 483-bb(c), but denied the motion as to her claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et. seq.*  The Honorable Ann M. Donnelly referred the matter to me to conduct an inquest on plaintiff's damages and issue a Report and Recommendation, in accordance with 28 U.S.C. § 636(b).  For the reasons set forth below, I respectfully recommend that the Court should enter a judgment in plaintiff's favor against defendants for $214,008.61 in damages as set forth herein.

## BACKGROUND

The Court accepts the well-pleaded allegations on the face of the complaint to be true, with the exception of facts related to damages. Fed. Civ. R. P. 8(b)(6); Hounddog Prods., L.L.C. v. Empire Film Grp., Inc., 826 F. Supp. 2d 619, 625 (S.D.N.Y. 2011); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). Plaintiff established the following facts as a result of defendants' default: Matecaña Bakery is a Colombian café and restaurant in Queens, New York that offers dine-in and take-out services. Compl. ¶29, 22, ECF No. 1. Defendant Juan Carlos Castro owned, controlled, and operated defendant Matecaña Bakery Inc. and regularly hired, disciplined, and fired employees. Id. ¶¶30–32. Castro also set employees' wages, schedules, and controlled their conditions of employment. Id.

### Wages, Hours, and Tips at the Bakery

Plaintiff worked as a cashier at the bakery from approximately August 20, 2016 until April 24, 2018, when she was terminated. Id. ¶¶22–36, 39. Plaintiff worked six days per week: five days a week from 5:30 a.m. to 3:00 p.m. and a double shift from 5:30 a.m. to approximately 11:00 p.m. one day per week, totaling 65 hours per week. Id. ¶41. Regardless of how many hours she worked, defendants paid plaintiff a flat weekly wage during her employment. Id. ¶¶44, 46. Defendants paid plaintiff $360.00 per week for her first year of employment, or approximately $5.56 per hour. Id. ¶¶44–45. Defendants paid plaintiff $405 per week from August 20, 2017 through April 24, 2018, or approximately $6.25 per hour. Id. ¶¶46–47. Defendants never paid plaintiff overtime compensation, despite plaintiff consistently working over 40 hours per week. Id. ¶49. Castro paid plaintiff in cash every Monday, and when he paid her, he instructed her to sign a form that falsely stated that she worked 40 hours and was paid $8.00 per hour. Id. ¶19.

As she was the only employee who served customers at the bakery, plaintiff was the only one entitled to tips, which were placed in a tip jar by the cash register or left by customers on the tables. Id. ¶¶60–61.  The total amount of tips varied but averaged approximately $70 to $80 per day. Id.  At the end of each day, Castro required plaintiff to count the tips in front of him. Id. ¶62.  Castro would then count the money in the register, assert it was short, and take plaintiff's tips to make up for the claimed shortage. Id. ¶62.  Each day, Castro took on average $30 to $40 in tips that plaintiff was entitled to. Id. ¶65.

Plaintiff did not receive the "Notice and Acknowledgement of Pay Rate and Payday Under Section 195.1 of the New York State Labor Law" during her employment at Matecaña Bakery. Id. ¶¶52, 55. As a result, plaintiff did not know that she had a right to a regular pay rate, an overtime rate, a regular payday, and what deductions were taken from her pay. Id. ¶¶52, 55.

*Sexual Harassment and Hostile Work Environment*

Plaintiff was sexually harassed by defendant Juan Carlos Castro throughout her employment at the bakery. Id. ¶67.  This included Castro watching pornographic videos during work hours when plaintiff was present and asking plaintiff invasive questions about her sex life. Id. ¶67–74.

Castro also permitted other employees to sexually harass plaintiff. Id. ¶76.  On two occasions, in January 2017 and February or March 2017, Roberto, a baker and cook at the bakery, grabbed plaintiff's breasts with his hands, and once put his hands inside her blouse. Id. ¶77–79.  Plaintiff reported Roberto's assaults to Castro, but Castro responded: "So what? What do you want me to do? You don't have any [immigration] papers," which plaintiff understood as a threat that she could be deported if she went to the police to report the assault. Id. ¶80.  On several occasions, Castro rubbed his genitals against plaintiff when he passed her, which made

plaintiff extremely uncomfortable and when she confronted him about it, he denied any misbehavior and said it was normal. Id. ¶75.

### Threats to Call the Immigration Authorities

Castro threatened to report plaintiff to the immigration authorities if she quit working for him or reported his unlawful treatment of her to any authorities. Id. ¶83. His threats included telling plaintiff that a customer worked for immigration authorities, that "now he knew what to do to report undocumented workers," and that plaintiff should "start running to get a head start." Id. ¶84–85. Plaintiff alleges she continued to work for defendants for very little pay while suffering ongoing sexual harassment and a hostile work environment, as she felt coerced, needed her job to survive and was afraid of deportation. Id. ¶87.

### Disability Discrimination and Termination

Defendant Castro did not allow plaintiff to take medical leave on at least two occasions. Id. ¶88–91. Around December 2016, plaintiff was forced to work with severe pain, fever, and congestion due to asthma when Castro refused her request for sick time. Id. ¶88. Further, in April 2018, plaintiff suffered a personal medical emergency, where she had severe swelling, pain, and fever due to mastitis. Id. ¶89. She requested time off work because of her illness, and also asked for time off to treat her asthma. Id. ¶90. Castro refused to approve her request for time off and became so angry about her requests that he hit the wall,[1] stating that plaintiff "was not allowed to do whatever she wanted." Id. ¶90–91. Plaintiff then quickly took her tips from the tip jar and left the bakery as Castro continued to hit the bakery's wall. Id. ¶91. Plaintiff did not immediately return to work, as she was ill and had medical appointments. Id. ¶92–94. A regular

---

[1] This was not the first time plaintiff alleges that Castro hit the walls of the bakery in anger. In or around March 2017, plaintiff arrived to work with a red eye and Castro asked whether her husband had hit her. Compl. ¶74, ECF No. 1. When she told Castro it was from the stress of being overworked by him and that she was going to report him, Castro became angry and punched the wall. Id.

customer told plaintiff that someone else had been hired for her position. Id. ¶95.  Plaintiff went to the bakery and found someone else at the cash register. Id. ¶96.  Castro saw her and told her to "give me my keys and everything else that you have," as she no longer worked there. Id. ¶97.

Plaintiff alleges that she suffers from depression, anxiety, and panic attacks as a result of her employment and termination from the bakery. Id. ¶98.  Plaintiff also alleges she receives psychological counseling and takes medication to treat her depression and anxiety as a result of defendants' actions. Id. ¶98; Contreras Decl. ¶63–64, ECF No. 12-6.

## PROCEDURAL HISTORY

Contreras filed a complaint against defendants with the New York Department of Labor on May 10, 2018 alleging failure to pay minimum wages, failure to pay overtime wages, and illegal wage deductions. Compl. ¶99, ECF No. 1.  On October 31, 2023, Contreras informed the agency that she intended to pursue a private action to address her claims, as she had not heard from the agency in years. Id. ¶100.

On October 2, 2018, Contreras filed an administrative charge with the New York City Commission on Human Rights ("NYCCHR"), against the Bakery, defendant Castro, and Robert "Doe" for unlawfully discriminating against her and creating a hostile work environment based on her actual or perceived disability, gender, and alienage, and for retaliating against her for engaging in a protected activity. Id. ¶101.  The NYCCHR issued a Notice of Probable cause determination and of Intention to Proceed to Public Hearing, dated October 21, 2020, due to "respondents' continued failure to file a verified answer or otherwise participate in this investigation." Id. ¶102.  To the best of Contreras' knowledge, the NYCCHR has taken no further action regarding her administrative charge. Id.

Plaintiff filed her complaint on December 11, 2023. ECF No. 1.  Defendant Castro was served personally on January 4, 2024, and Matecaña Bakery Inc. was served via the New York Secretary of State on December 19, 2024. ECF No. 5; ECF No. 12-2; ECF No. 6.  On February 27, 2024, the Court directed plaintiff to take appropriate action as defendants had not responded to the complaint. Order dated February 27, 2024.  Plaintiff requested and the Clerk of Court noted entry of defendants' default on March 1, 2024. ECF No. 7; ECF No. 8.  Plaintiff filed a motion for a default judgment, which the Honorable Ann Donnelly referred to me.

Upon review, plaintiff's default judgment motion had two deficiencies: the first was insufficient proof of service on Matecaña Bakery, and the second was a lack of proof of defendant's military status.  Order dated June 25, 2024.  Plaintiff supplemented her motion and corrected the deficiencies. ECF No. 12.  I issued a Report, recommending that plaintiff's motion for a default judgment against defendants should be granted on plaintiff's claims under the NYLL, NYSHRL, NYCHRL, TVPA and NYSSL but should be denied on plaintiff's FLSA claims. ECF No. 14.  Judge Donnelly adopted the Report and Recommendation and referred this matter to me to conduct an inquest on plaintiff's damages. ECF No. 16.  The Court held an inquest on November 21, 2024.  Plaintiff appeared with counsel Heidy Rodriguez, Rebekah Cook-Mack and Elizabeth Saylor; defendants failed to appear. See Minute Entry, November 21, 2024.[2]  Plaintiff filed a post-hearing brief on January 13, 2025. ECF No. 24.

## DISCUSSION

### I.    Legal Standard

A defendant's default is an admission of all well-pleaded allegations in the complaint except those relating to damages. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,

---

[2] At the inquest, Cristina Sanjuan interpreted for plaintiff who is Spanish speaking.

973 F.2d 155, 158 (2d Cir. 1992). If a district court finds that plaintiff's allegations state a claim upon which relief can be granted, the Court may conduct a hearing or rely on affidavits or other documentary evidence to determine damages on a default judgment. FED. R. CIV. P. 55(b)(2); see Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc., 699 F.3d 230, 234 (2d Cir. 2012) ("Rule 55(b)(2) and relevant case law give district judges much discretion in determining when it is 'necessary and proper' to hold an inquest on damages.'" (citation omitted)). In the default context, plaintiff bears the burden of proving the damages requested "to a 'reasonable certainty.'" Martinez v. Alimentos Saludables Corp., No. 16-CV-1997 (DLI) (CLP), 2017 WL 5033650, at * 11 (E.D.N.Y. Sept. 22, 2017) (quoting Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012)). If plaintiff fails to demonstrate her damages to a reasonable certainty, then the court should decline to award any damages, even where liability has been established through default. Belizaire v. RAV Investigative & Sec. Servs. Ltd., 61 F. Supp. 3d 336, 345 (S.D.N.Y. 2014). A damages award upon a defendant's default "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c).

## II.    Analysis

Here, plaintiff seeks compensatory damages for unpaid wages, statutory damages, liquidated damages, as well as pre- and post-judgment interest for unpaid wages and backpay.

### A.  Unpaid Wages[3]

"As a preliminary matter, when an employer fails to maintain accurate records or where, as here, no records have been produced as a consequence of a defendant's default, courts have

---

[3] Plaintiff requests compensatory damages for unpaid wages under the NYLL and NYCRR and forgoes a request for unpaid wages pursuant to the TVPA. See Mem. L. 9–10, ECF No. 24.

held that the 'plaintiff['s] recollection and estimates of hours worked are presumed to be correct.'" Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 88 (E.D.N.Y. 2012).

## 1. Minimum Wages

When an employer fails to pay minimum wage, NYLL permits an employee to recover "the amount of any such underpayments." N.Y. Lab. Law § 663(1).  The Court must first determine plaintiff's "regular rate of pay" before calculating an appropriate damage award. Berrios v. Nicholas Zito Racing Stable, Inc., 849 F. Supp. 2d 372, 385 (E.D.N.Y. 2012) (quoting Giles v. City of New York, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999).  "Regular rate of pay" is determined "by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." 12 N.Y.C.R.R. § 146-3.5(b).

Plaintiff testified defendants paid her $360 per week for her first year at the bakery and $405 per week from August 2017 through April 2018.[4] Tr. 17:7–18, ECF No. 23.  Plaintiff worked more than 40 hours per week. Tr. 9:10–24.

The Court determines plaintiff's regular rate of pay by using the formula in 12 N.Y.C.R.R. § 146-3.5(b).  Plaintiff's weekly rate of pay for her first year, $360 divided by 40 hours, is $9.00.  For her second year of employment plaintiff's weekly rate of pay, $405 divided by 40 hours, is $10.125.  Plaintiff's regular rate of pay was less than the minimum wage in New York from December 31, 2016 through April 19, 2018.  Therefore, plaintiff is entitled to recover

---

[4] Plaintiff first testified that defendants paid her $360 the entire time she worked at the bakery. Tr. 11:17–21. Plaintiff later corrected herself and testified that she made $405 per week after she worked at the bakery for a year. Tr. 16:8–25; 17:7–18; 18:12:15. Plaintiff did not provide a specific date for when her salary was increased. Tr. 18:9–15.  Further, plaintiff's complaint alleges defendants terminated her on April 24, 2018. Compl. ¶2, 14, ECF No. 1. At the inquest, plaintiff testified that she worked at the bakery until approximately April 19, 2018. Tr. 8:20–24.  As allegations are not taken as true for the purposes of determining damages, the Court relies on plaintiff's testimony at the inquest to determine her damages. Antoine v. Brooklyn Maids 26, Inc., 489 F. Supp. 3d 68, 90 (E.D.N.Y. 2020).

damages for defendants' failure to pay her the minimum hourly wage from December 31, 2016

through April 19, 2018.[5]

     Accordingly, I recommend that the Court should enter a default judgment awarding

plaintiff $3,477.68 in damages for defendants' failure to pay plaintiff the minimum wage.

### Table A: Minimum Wages Due

| DATE RANGE | REGULAR RATE OF PAY | MINIMUM WAGE RATE OF PAY[6] | DIFFERENCE BETWEEN REGULAR RATE V. MINIMUM WAGE | WEEKS WORKED | TOTAL MINIMUM WAGE DUE |
|---|---|---|---|---|---|
| August 19, 2016–December 30, 2016 | $9.00 | $9.00 | $0 | 19 | $0.00 |
| December 31, 2016–August 19, 2017 | $9.00 | $10.50 | $1.50 | 33 | $1,980.00 |
| August 20, 2017-December 30, 2017 | $10.13 | $10.50 | $0.37 | 18.86 | $279.13 |
| December 31, 2017–April 19, 2018 | $10.13 | $12.00 | $1.87 | 16.29 | $1,218.49 |
| MINIMUM WAGES DUE: | | | | | **$3,477.62** |

### 2. Overtime Compensation

     NYLL requires overtime compensation of one and one-half times an employee's regular

hourly rate. See 12 N.Y.C.R.R. § 146-1.4. Absent an agreement between the parties, an

employee's weekly salary is presumed to only cover the first forty hours of the workweek.

Berrios v. Nicholas Zito Racing Stable, Inc., 849 F. Supp. 2d 372, 385 (E.D.N.Y. 2012) (quoting

Giles v. City of New York, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999)). Here, by their default,

---

[5] Plaintiff does not allege that defendants considered her a "tipped employee." N.Y.C.R.R. § 146-1.3 ("An employer may take a credit towards the basic minimum hourly rate if a service employee or food service worker receives enough tips and if the employee has been notified of the tip credit as required in section 146-2.2 of this Part."). Therefore, the Court's minimum wage analysis is premised on New York's statutory minimum wage for a worker at a small employer, not on minimum wage as a "tipped employee" under N.Y.C.R.R. § 146-1.3.

[6] The minimum wage in New York and New York City changed multiple times during the relevant time period as follows: $9.00 per hour on and after December 31, 2015; $10.50 per hour on and after December 31, 2016; $12.00 per hour on and after December 31, 2017. N.Y. Lab. Law § 652(1); see also 12 N.Y. Admin. L. Code § 142-2.1(a)(1)(ii) (New York City regulations outlining the same minimum wage rates for small employers).

defendants fail to rebut the 40-hour weekly presumption.  See Nam v. Ichiba Inc., No. 19-CV-1222 (KAM), 2021 WL 878743, at *8 (E.D.N.Y. Mar. 9, 2021) (citing Valdez v. H & S Rest. Operations, Inc., No. 14-CV-4701, 2016 WL 3079028, at *5 (E.D.N.Y. Mar. 29, 2016)); Bosoro v. Am. Comprehensive Healthcare Medical Grp, P.C., No. 14-CV-1099 (ENV) (SG), 2015 WL 5676679, at *6 (E.D.N.Y. Aug. 31, 2015) (quoting Giles, 41 F. Supp. 2d at 317) Report and Recommendation adopted by 2015 WL 5686481 (Sept. 25, 2015).

Before calculating a proper award of overtime compensation, the Court must determine how many overtime hours plaintiff worked.  Plaintiff stated that she worked six days per week, at 65 hours per week, from August 2016 through April 2018. Tr. 9:10–24.[7]

Plaintiff's overtime damages are calculated from her complaint and testimony.  A damages award must not exceed the amount demanded in the pleadings. FED. R. CIV. P. 54(C); Belizaire v. RAV Investigative & Sec. Servs. Ltd., 61 F. Supp. 3d 336, 345 (S.D.N.Y. 2014). Plaintiff's complaint sought approximately 25 hours of overtime compensation per week.[8] Therefore, plaintiff is limited to 25 hours of overtime per week.  The period between August 20, 2016 and April 19, 2018 is 86 weeks and 5 days.  The Court finds that plaintiff worked 65 hours per week, with 25 hours of uncompensated overtime per week for 86 weeks and 5 days.[9]

---

[7] Plaintiff also testified that she was "always, almost always" called in to work on her day off, Wednesday, and when she was called in on Wednesdays, she worked from 5:30 a.m. to 8:00 p.m. Tr. 11: 8–11; 12:14-17.  However, plaintiff's motion does not support a claim for those hours. See Damages Spreadsheet, ECF No. 12-8; Supp. Br. at 15–17, ECF No. 24.

[8] Plaintiff was consistent that she worked six days a week, with one double shift per week.  See Compl. ¶41, ECF No. 1; Contreras Decl. ¶8; ECF No. 12-6. However, plaintiff's pleadings are inconsistent regarding her total hours worked per week. See Compl. ¶41, ECF No. 1 (working over sixty-hours per week); contra Contreras Decl. ¶8, ECF No. 12-6 (working approximately 55.25 hours per week); contra Damages Spreadsheet, ECF No. 12-7 (working 55.25 hours per week but failed to include "Monday" in plaintiff's average work schedule).  In the most recent declaration submitted by counsel, plaintiff's double shift was Thursday and plaintiff worked 65 hours per week. Rodriguez Decl. 7, ECF No. 17-1.  The Court relies on plaintiff's testimony at the inquest as limited by the pleadings.

[9] Plaintiff's weekly salary, $360, divided by 40 hours per week, yields a regular hourly rate of pay of $9.00.  This figure is then multiplied by 1.5 to calculate $13.50 as plaintiff's overtime hourly rate for August 19, 2016 through December 30, 2016.  From December 31, 2016 through December 30, 2017, the basic minimum hourly rate was $10.50.  See 12 N.Y. Admin. Code § 142-2.1(a)(1)(ii).  Plaintiff's hourly overtime rate from December 31, 2016

10

Thus, multiplying plaintiff's regular overtime rate of $13.50, $15.75, and $18.00 for the periods in question,[10] the Court should grant plaintiff's motion against defendants and award plaintiff $33,907.50 in overtime compensation damages.

### Table B: Overtime Wages Due

| DATE RANGE | OVERTIME PREMIUM[11] | OVERTIME RATE | OVERTIME HOURS PER WEEK | WEEKS UNPAID | SUBTOTAL |
|---|---|---|---|---|---|
| August 19, 2016–December 30, 2016 | $4.5 | $13.50 | 25 | 19 | $6,412.50 |
| December 31, 2016–December 30, 2017 | $5.25 | $15.75 | 25 | 52 | $20,475.00 |
| December 31, 2017–April 19, 2018 | $6 | $18.00 | 25 | 15.6 | $7,020.00 |
| **OVERTIME WAGES DUE:** | | | | | **$33,907.50** |

### 3.  Spread of Hours Pay

Plaintiff also seeks damages for defendants' failure to provide spread of hours compensation, or one additional hour of pay, for each day she worked over ten hours. See 12 N.Y.C.R.R. 146-1.6(a). This "compensation is calculated at the applicable minimum wage 'regardless of a given employee's regular rate of pay.'" Martinez v. Alimentos Saludables Corp., No. 16-CV-1997(DLI)(CLP), 2017 WL 5033650, at *17 (E.D.N.Y. Sept. 22, 2017) (citing 12 N.Y.C.R.R. 146-1.6(d)); Man Wei Shiu v. New Peking Taste Inc., No. 11-CV-1175, 2014 WL 652355, at *10 (E.D.N.Y. Feb. 19, 2014) (affirming award of default judgment where plaintiff alleged she worked in excess of ten hours and defendant failed to provide her spread-of-hours pay); Brito v. Marina's Bakery Corp, No. 19-CV-00828, 2022 WL 875099, at *19, 27.

---

through December 30, 2017 is $15.75.  From December 31, 2017 through April 19, 2018, the basic minimum hourly rate was $12.00, and plaintiff's hourly overtime rate was $18.00.
[10] See Table B.
[11] Overtime Premium = Overtime Rate of Pay less Regular Rate of Pay. See Table A, *supra*.

Plaintiff testified she worked in excess of ten hours at least one day of each week from August 20, 2016, until April 19, 2018. Tr. 9:14–24, ECF No. 23.  In that time, defendants compensated plaintiff at a flat weekly wage. Id.  Accordingly, the Court should grant plaintiff's motion and award plaintiff $897.00 in damages for defendants' failure to provide spread-of-hours pay.[12]

### 4.  Unpaid Gratuities

Plaintiff seeks damages for unpaid tips withheld by defendants.  Plaintiff testified that customers tipped her approximately $70–80 each weekday and $100–110 each weekend day throughout her time working at the bakery.[13] Tr. 19:11–22; 21:9–10 Plaintiff was the only employee entitled to tips. Tr. 19:18, ECF No. 23.  Plaintiff counted the tips each day, at defendant Castro's instruction. Tr. 21:3–6.   Each day, Castro would take her tips and leave plaintiff between $25 and $40.[14] Tr. 21:12–13.

As discussed *infra*, plaintiff's claim is limited by the relief she sought in the complaint, where plaintiff's complaint did not distinguish between weekend and weekday tips and alleged that she went home with, on average, $40 each day. Compl. ¶¶60, 65, ECF No. 1.  Accordingly, the Court should award plaintiff damages of $35 per day,[15] the average amount of tips defendant failed to provide to plaintiff according to her complaint.  As plaintiff worked at the Bakery six

---

[12] Between August 19, 2016 and April 19, 2018, plaintiff worked 19 weeks at $9.00 rate, 52 weeks at a required minimum wage of $10.50, and 15 weeks and four days at a required minimum wage of $12.00. Therefore, (9.00 * 19) + (10.50 * 52) + (12.00 * 15) = $897.00.

[13] Plaintiff's complaint did not distinguish between weekend and weekday tips; her pleading alleged tips averaging $70 to $80 per day. Compl. ¶60, ECF No. 1.

[14] Plaintiff testified that she would "always get $30, or $25, or $40." Tr. 21:12–13.  Upon further questioning for clarification, plaintiff stated that she would leave each day with $25 or $30 in tips. Tr. 21, 14–16.  Plaintiff's complaint alleges that defendant Castro would leave plaintiff, on average, $40 in tips. Compl. ¶65, 60, ECF No. 1.

[15] The Court takes the average of the tips alleged in the complaint minus the average of the gratuities plaintiff alleged she took home each day to determine plaintiff's unpaid gratuities ($75 earned tips – $40 plaintiff's take home of the tips = $35 unpaid tips).

days per week for 86 weeks and five days (amounting to 520 working days), the Court should grant plaintiff's motion for unpaid gratuities totaling $18,200.00 (520 * $35).[16]

### B. Statutory Damages

New York's Wage Theft Prevention Act ("WTPA") allows employees to recover damages if an employer does not provide written wage notices at the time of hiring. N.Y. Lab. Law § 195(1-a) (amended 2015).  Employees are entitled to damages of $50.00 per workday up to $5,000.  Reyes v. Art Tek Design, Ltd., No. 16-CV-5168 (ADS) (AYS), 2018 WL 614980, at *8 (E.D.N.Y. Jan. 11, 2018), adopted by, 2018 WL 611733 (E.D.N.Y. Jan. 29, 2018) (citations omitted).  Further, NYLL § 195(3) provides that "every employer shall . . . furnish each employee with a statement with every payment of wages."  The wage statement must list "information about the rate and basis of pay, any allowances and deductions, and the employer's identity and contact details." Rojas v. Splendor Landscape Designs Ltd., 268 F. Supp. 3d 405, 412 (E.D.N.Y. 2017) (citation omitted).   An employee is entitled to $250 per workday that the violation occurred, up to a maximum of $5,000. See N.Y. Lab. Law § 198(1-d) (amended 2015).

Here, plaintiff testified that she did not receive the required notices or pay stubs. Tr. 18:19–25; 19:1–9.  Plaintiff testified that had she gotten the notices, she "would have never got into that situation and [she] would have complained about it." Tr. 19:5–9.  Accordingly, the Court should grant plaintiff's motion for a default judgment for $10,000 in statutory damages against defendants for violating the WTPA and the NYLL regarding wage notices.

### C. Liquidated Damages

Plaintiff seeks liquidated damages for the entire period of her employment under the NYLL.  Liquidated damages under the NYLL are calculated as 100% of the total amount of

---

[16] Plaintiff states that on her last day of working in the Bakery, she took her tips from the tip jar before she left. Tr. 15:1–10, ECF No. 23.  Therefore, the Court should not award plaintiff unpaid gratuities for that date.

underpayments due to the employee. NYLL § 663(1).  The Court has discretion to award no liquidated damages if the employer shows the act or omission giving rise to such action was in good faith. Id.

Here, defendants waived any good faith defense due to their default.  Jimenez v. Green Olive Inc., No. 23-CV-8805 (AMD) (JAM), 2024 WL 3763467, at *21 (E.D.N.Y. Aug. 13, 2024).  Plaintiff is entitled to liquidated damages.  Accordingly, the Court should grant plaintiff's motion for a default judgment and award plaintiff $37,385.18 in liquidated damages for defendants' minimum wage and overtime violations; $897.00 in liquidated damages for defendants' violation of spread of hours; $18,200.00 in liquidated damages for defendants' unpaid gratuity violations, for a total of $56,482.18 in liquidated damages.

### D.  Compensatory Damages

Plaintiff seeks $251,805 in backpay as damages for defendants' violations of the NYSHRL and NYCHRL.  "Back pay is available under the NYSHRL and the NYCHRL," where the purpose of backpay is to make a plaintiff whole. See Gordon v. APS Contractors Inc., No. 21-CV-259-WFK-JRC, 2024 WL 4029520, at *8 (E.D.N.Y. Feb. 20, 2024), report and recommendation adopted, No. 21-CV-259 (WFK) (JRC), 2024 WL 4028470 (E.D.N.Y. Sept. 3, 2024) (where Title VII provides the standards for backpay under NYSHRL and NYCHRL). That is, to "completely redress the economic injury the plaintiff has suffered as a result of discrimination." Saulpaugh v. Monroe Cmty. Hosp., 4 F.3d 134, 145 (2d Cir. 1993) (citation omitted).  However, "an individual complaining of discrimination has a duty to mitigate his or her damages by making reasonable efforts to obtain comparable employment." Goldberg v. New York State Div. of Hum. Rts., 85 A.D.3d 1166, 1167 (2d. Dep't 2011); see also Moore v. Houlihan's Rest., Inc., No. 07-CV-03129 ENV RER, 2011 WL 2470023, at *5 (E.D.N.Y. May

14

10, 2011), report and recommendation adopted, No. 07-CV-3129 ENV RER, 2011 WL 2462194 (E.D.N.Y. June 17, 2011) ("A discharged employee 'must use reasonable diligence in finding other suitable employment,' which need not be comparable to their previous positions.") (quoting Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 54 (2d Cir.1998)).

Plaintiff's declaration states she "diligently attempted to find new employment, but [] was unable to find any work until August 20, 2020." Contreras Decl. ECF No. 12-6.  However, plaintiff testified that after she left the bakery, she started her next job less than one month later.[17] Tr. 26:23–25; 27:1.  Plaintiff worked at a clothing store, Canada Weather Gear, for one month in May 2018, working 20 hours per week, earning $13 per hour. Tr. 24:14–25; 25:1–3. Plaintiff did not state her position but testified that she "left that job because she was hospitalized because of my asthma – oh, panic attack." Tr. 26, 1:3, ECF No. 23.   Sometime in January 2019, plaintiff testified she worked at a medical clinic as a cleaner two evenings per week for eight hours per week, earning $15 per hour, for "almost a year." Tr. 22:1–11; 23:6–7; 24:4–6; 27:7–14. Plaintiff did not state why she left that position or what efforts she made to secure alternate employment after this job ended.  For three months while she worked at the medical clinic, plaintiff also worked at a taqueria for forty-hours per week, earning $17 per hour. Tr. 24:1–13. Plaintiff failed to provide start or end dates to her employment at the taqueria, what her position was, why she left, or what efforts she made to secure new employment after that job.  From August 2020 through March 2022, plaintiff worked at the Queens Museum as a cleaner, earning $525 per week for 35 hours of work. Tr. 22:13–25; 23:1–9.  Plaintiff again did not state why that job ended in March 2022, or what she did to secure new employment before she started working at LaGuardia Airport as a cook at a restaurant on December 27, 2022. Tr. 25:6–24; 38:20–25.

---

[17] One day before the inquest, counsel informed the Court that they "became aware" of plaintiff's employment at Canada Weather Gear. ECF No. 21.

Plaintiff testified she works forty-hours per week and is paid $19 per hour at her current job. Tr. 25:19–24.

Plaintiff did herself few favors regarding her credibility with the numerous discrepancies between her sworn declaration and her inquest testimony.[18] See generally Tr. ECF No. 23; Cardwell v. Davis Polk & Wardwell LLP, No. 1:19-CV-10256-GHW, 2023 WL 2049800, at *38 (S.D.N.Y. Feb. 16, 2023) (declining an award of backpay where plaintiff failed to mitigate damages); see also Quintero v. Angels of the World, Inc., No. 19-CV-6126 (DG), 2021 WL 4464123, at *14 (E.D.N.Y. Sept. 10, 2021), report and recommendation adopted sub nom. Quintero v. Stoupas, No. 19-CV-06126 (DG)(RLM), 2021 WL 4463488 (E.D.N.Y. Sept. 29, 2021) (on a motion for default judgment, declining to recommend an award of backpay damages post-dating plaintiff's employment with defendants, "based on the sparse information in the record" and plaintiff's failure to provide proof of mitigation) (collecting cases).

As plaintiff testified that she left her job at Canada Weather Gear due to lingering impacts from her distressing treatment at Matecaña Bakery, plaintiff's loss of wages after her employment at Canada Weather Gear can be attributed to discrimination she experienced at the bakery.  However, as plaintiff failed to testify as to her later employment, the Court should grant plaintiff's motion for a default judgment but limit the compensatory damages award from April 20, 2018 through January 5, 2019, less plaintiff's eighty hours of work at Canada Weather Gear.[19] See Moore v. Houlihan's Rest., Inc., No. 07-CV-03129 ENV RER, 2011 WL 2470023, at *5 (E.D.N.Y. May 10, 2011), report and recommendation adopted, No. 07-CV-3129 ENV RER,

---

[18] Mitigation of damages is an affirmative defense and defendants' burden: here defendants have defaulted. Joseph v. HDMJ Rest., Inc., 970 F. Supp. 2d 131, 151 (E.D.N.Y. 2013). However, the Court must still determine the appropriate backpay award and credibility is important to that determination.
[19] Her earnings at Canada Weather Gear were $1,040: she testified she worked 20 hours per week for one month earning $13 per hour.

2011 WL 2462194 (E.D.N.Y. June 17, 2011) (limiting recoverable backpay for plaintiff's full period of unemployment due to failure to mitigate, but awarding sufficient backpay to make plaintiff whole) (collecting cases).

In total, the Court should award plaintiff $51,044.25 in backpay for defendants' violations of plaintiff's rights under the NYSHRL and NYCHRL.[20]

### E. Emotional Distress Damages

Plaintiff seeks $88,920.00 for emotional distress damages under the TVPA or, in the alternative, $40,000 for emotional distress damages under the NYSHRL and NYCHRL.

### 1. TVPA

Under the TVPA, victims can seek "emotional distress damages as a 'form of compensatory damages.'" Belvis v. Colamussi, No. CV 16-544 (JFB)(ARL), 2018 WL 3151698, at *6 (E.D.N.Y. Feb. 20, 2018) (quoting Carazani v. Zegarra, 972 F. Supp. 2d 1, 24 (D.D.C. 2013)). "To determine emotional distress damages, courts typically examine 'the duration and intensity of the emotional distress.'" Id. "In addition, courts often consider the 'sex, age, condition in life and any other fact indicating susceptibility of the injured person to [the] type of harm,' including 'false promises to provide a salary, health insurance, vacation time and a safe place to live and work.'" Id.

Plaintiff seeks $88,920.00, or $171 per day against defendants for her emotional distress. Mem. L. 12, ECF No. 24. Plaintiff testified that she did not remember a time when Castro stated

---

[20] As plaintiff worked, on average, 65 hours per week, her weekly rate with overtime and tips should have been $1,392 at Matecaña Bakery until December 30, 2018, and $1,508.25 on and after December 31, 2018, accounting for raised minimum wages. N.Y. Lab. Law § 652(1); see also 12 N.Y. Admin. L. Code § 142-2.1(a)(1)(ii); see also Quintero v. Angels of the World, Inc., No. 19-CV-6126 (DG), 2021 WL 4464123, at fn.10 (E.D.N.Y. Sept. 10, 2021), report and recommendation adopted sub nom. Quintero v. Stoupas, No. 19-CV-06126 (DG)(RLM), 2021 WL 4463488 (E.D.N.Y. Sept. 29, 2021) ("Back-pay awards include lost tips."). There are 36 weeks and 2 days between April 20, 2018 and December 30, 2018, totaling backpay of $50,576. There is one week between December 31, 2018 and January 7, 2019, totaling backpay of $1,508.25. Plaintiff's total compensation between April 20, 2018 through January 7, 2019 was $52,084.25, less $1,040 for her compensation at Canada Weather Gear.

that he would call immigration authorities but stated that "he said so." Tr. 37:19–21.  Plaintiff

also testified that Castro told her to "go to the door and run because immigration has come to

take you – to deport you" when men in green uniforms came to the Bakery. Tr. 36:10–11.  The

men, it turned out, worked at Flushing Park. Tr. 36:16–20.  Plaintiff did not testify when Castro

first referenced deporting her.[21]

      Plaintiff seeks emotional distress damages based on an award in another Eastern District

case. See Belvis v. Colamussi, No. CV 16-544 (JFB)(ARL), 2018 WL 3151698, at *2 (E.D.N.Y.

Feb. 20, 2018).  In Belvis, plaintiffs were recruited from the Philippines to work in the United

States. Id.  Upon advocating about their working conditions, defendants threatened to revoke

plaintiffs' visa sponsorship. Id.  However, defendants never actually sponsored plaintiffs' visas.

Id.  Plaintiffs "established they were trafficked by and/or forced into involuntary labor by the

defendants, . . . [where] they suffer from disrupted sleep, nightmares, feelings of fear, difficulty

developing trust, anxiety, depression, difficulty concentrating, and stress." Id. at *7.  They

supported their claim for emotional distress damages under the TVPA through their own

testimony and testimony from a licensed psychologist. Id.

      Here, plaintiff fails to establish her emotional distress damages under the TVPA.

Plaintiff failed to testify to specific instances, other than the comment when the men in green

uniforms visited the Bakery, that defendant Castro used legal proceedings to force her labor and

the impact those discrete instances had on her.  See generally Tr. ECF No. 24.  Plaintiff failed to

testify that Castro made false promises to compel her to work at the bakery. Id.  While plaintiff

demonstrates sufficient emotional distress under state and city law claims, infra, her testimony

does not establish a basis for emotional distress damages pursuant to the TVPA.

---

[21] Plaintiff testified the men in green uniforms came to the Bakery when Trump won the 2016 election. Tr. 36:5–11.

## 2.  NYSHRL and NYCHRL

"Violations of [] the NYSHRL and the NYCHRL 'entitle a plaintiff to compensatory damages for pecuniary loss as well as pain and suffering.'" Gordon v. APS Contractors Inc., No. 21-CV-259-WFK-JRC, 2024 WL 4029520, at *8 (E.D.N.Y. Feb. 20, 2024), report and recommendation adopted, No. 21-CV-259 (WFK) (JRC), 2024 WL 4028470 (E.D.N.Y. Sept. 3, 2024).  "The Second Circuit sorts emotional distress claims into three categories of claims: 'garden-variety,' 'significant' or 'egregious.'" Cavalotti v. Daddyo's BBQ, Inc., No. 15-CV-6469, 2018 WL 5456654 at *27 (E.D.N.Y. Sep. 8, 2018), quoting Rainone v. Potter, 388 F. Supp. 2d 120, 122 (E.D.N.Y. 2005).  "Garden-variety" emotional distress claims require little evidentiary support and can be based on testimony that is vague or conclusory. Rainone, 388 F. Supp. 2d at 122; see also Antoine v. Brooklyn Maids 26, Inc., 489 F. Supp. 3d 68, 97 (E.D.N.Y. 2020) (where "garden-variety" cases award between $6,500 to $46,000).  Plaintiff here seeks $40,000 in garden-variety emotional distress damages.

Plaintiff testified that she was a very joyful person and that she never experienced a panic attack before working at Matecaña Bakery. Tr. 44:16–18; 38:2–3; 44:13–18.  Plaintiff testified she now has nightmares and "cannot be with anyone who is shouting, screaming, because I feel like I — I'm — I lose my breath and am suffocating." Tr. 38:4–8.  Plaintiff left Canada Weather Gear after working one month because she had a panic attack and was hospitalized. Tr. 26:1–2. Plaintiff described suffering another panic attack five years later, on May 29, 2023, when a chef at the airport restaurant where she worked shouted at her. Tr. 38:9–25; 40:19. Plaintiff also had another panic attack "recently" at another restaurant within LaGuardia, where a manager told her to go home because she already completed her scheduled hours, where other coworkers embraced plaintiff because she was shaking and crying. Tr. Tr. 44:19–25; 45:2–12.  In May

2018, she sought treatment from a psychiatrist, social worker, and nurse practitioner to treat her depression and panic attacks. Tr. 41:5–13; 39:17–23.  Her care team provided therapy and the prescription medication "escitalopram," which she continues to take once per day. Tr. 41:16–25; 42:1–6; 43:9–10; 44:9–11. 39:17–23.

Plaintiff has offered sufficient testimony to support her claim of emotional distress. Based on plaintiff's testimony, it appears plaintiff began feeling anxious and depressed around the time plaintiff stopped working at Matecaña Bakery.  While plaintiff does not provide medical evidence directly linking plaintiff's employment at Matecaña to her anxiety and depression, the nature of the treatment and proximity to her termination support plaintiff's claim of emotional harm from her time at Matecaña Bakery.  Accordingly, plaintiff's motion for a default judgment against defendants seeking $40,000 in emotional distress damages should be granted. See also Quintero v. Angels of the World, Inc., No. 19-CV-6126 (DG), 2021 WL 4464123, at *15 (E.D.N.Y. Sept. 10, 2021), report and recommendation adopted sub nom. Quintero v. Stoupas, No. 19 CV 06126 (DG)(RLM), 2021 WL 4463488 (E.D.N.Y. Sept. 29, 2021) (awarding $30,000 for emotional distress following defendants' sexual harassment) (collecting cases).

## F.  Interest

Prevailing plaintiffs are entitled to pre-judgment interest on their underpayment claim under New York Law. See N.Y. Lab. Law § 198 (1-a).  The rate of pre-judgment interest under New York law is nine percent per annum. C.P.L.R. § 5004.  Pre-judgment is calculated "from the date [each item] was incurred or upon all of the damages from a single reasonable intermediate date." Ying Ying Dai v. ABNS NY Inc., 490 F. Supp. 3d 645, 662 (E.D.N.Y. 2020) (selecting a "midpoint [of a term of employment] as an appropriate intermediate date for the purpose of calculating interest").

Plaintiff seeks pre-judgment interest on her unpaid wages claim from the midpoint of her employment at Matecaña: June 20, 2017. ECF No. 24.  Applying a nine percent per annum interest rate to plaintiff's unpaid wages of $56,481.50,[22] results in $13.93 in daily interest. There are two thousand eight-hundred and seventeen days between June 20, 2017 and March 7, 2025. Therefore, it is recommended that plaintiff should be awarded interest of $39,240.81 in pre-judgment interest through March 7, 2025 for plaintiff's unpaid wages.[23]

Plaintiff's pre-judgment interest on her backpay award is calculated from the halfway point between the date of a plaintiff's missed first paycheck through the date of judgment. See Jattan v. Queens Coll. of City Univ. of New York, 64 A.D.3d 540, 542 (2d Dep't 2009). Plaintiff seeks pre-judgment interest on her backpay award from September 4, 2021, the halfway point from the date of her termination through the date of her supplemental briefing for the inquest. ECF No. 24.  There are one thousand two hundred eighty days between September 4, 2021 and March 7, 2025.  Therefore, it is recommended that plaintiff should be awarded $4,070.40 of pre-judgment interest through March 7, 2025 for her backpay claim.[24]

Plaintiff also requests post-judgment interest. Pursuant to 28 U.S.C. § 1961(a), litigants are entitled to post-judgment interest on damage awards issued by a district court. Schipani v. McLeod, 541 F.3d 158, 165 (2d Cir. 2008).  Post-judgment interest is established by federal statute and its accrual is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a).  Plaintiff is entitled to post-judgment interest at the statutory

---

[22] A plaintiff may not seek pre-judgment interest on liquidated damages, wage notice and wage statement provisions. Ying Ying Dai v. ABNS NY Inc., 490 F. Supp. 3d 645, 662 (E.D.N.Y. 2020).
[23] An additional $13.93 per day should be awarded through entry of judgment.
[24] An additional $3.18 per day should be awarded through entry of judgment.

rate prescribed by 28 U.S.C. § 1961, calculated from the date the district court enters judgment. See Cappiello v. ICD Publ'ns, Inc., 720 F.3d 109, 112 (2d Cir. 2013) ("[U]nder § 1961, federal district courts must apply the federal rate of post-judgment interest to judgments rendered in diversity actions."). Thus, under 28 U.S.C. § 1961(a), plaintiff is entitled to post-judgment interest from the date judgment is entered until the judgment is paid.

## III.    Award Summary

In sum, the Court should award plaintiff the following:

| CATEGORY | TOTAL AMOUNT |
|---|---|
| Minimum Wage | $3,477 |
| Unpaid Overtime | $33,907.50 |
| Spread of Hours | $897.00 |
| Unpaid Gratuities | $18,200.00 |
| Statutory Damages | $10,000 |
| Liquidated Damages | $56,482.18 |
| Backpay | $51,044.25 |
| Emotional Distress | $40,000 |
| **Total** | **$214,008.61** |

## CONCLUSION

Accordingly, it is respectfully recommended that the Court should grant plaintiff's motion for a default judgment and plaintiff should be awarded $214,008.61, plus pre- and post-judgment interest. Plaintiff is hereby ordered to serve a copy of this Report upon defendants at their last known addresses and to file proof of service on the docket within three business days.[25]

---

[25] If plaintiff's counsel moves for attorney's fees, they shall so move within 14 days of the entry of judgment. FED. R. CIV. P. 54(d)(2)(B).

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report to file written

objections.  See also Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be

filed with the Clerk of the Court.  Any request for an extension of time to file objections must be

made within the fourteen-day period.  Failure to file a timely objection to this Report generally

waives any further judicial review.  Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293

F.3d 42, 46 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir.

1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated:  March 7, 2025
        Brooklyn, New York